UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Christopher Beaulieu

   v.                                               Civil No. 15-cv-012-JD

William Wrenn, Commissioner,
New Hampshire Department of
Corrections et al.[1]

**REPORT AND RECOMMENDATION**

Before the court is the complaint (doc. no. 1) filed by New Hampshire State Prison ("NHSP") inmate Christopher Beaulieu, alleging that defendants have violated his Eighth and Fourteenth Amendment rights. The matter is before the court for preliminary review pursuant to 28 U.S.C. § 1915A(a) and LR

---

[1] In the caption of his complaint (doc. no. 1), plaintiff has named the New Hampshire Department of Corrections Commissioner William Wrenn and Assistant Commissioner Helen Hanks, and the following New Hampshire State Prison employees: Warden Richard M. Gerry; Capt. Paul S. Cascio; Capt. Charles G. Boyajian; Unit Manager Robert P. McGrath; Sgt. Thomas Akerley; Lt. James Brown; Lt. Paul Carroll; Hearings Officer Ike Barton; Cpl. Craig Orlando; Cpl. Paige Kimball; Director Colon K. Forbes; Corrections Officers Wayne Defeo, John Thimba, Christopher Bernstein, Christopher Ziemba, Joseph Michaud, and John Aulis; Cpl. Paige Kimball; Dr. Paul Brown; Dr. Jeffrey Fetter; Nurse Practitioners Lois Harriman, Catherine Fontaine, and Emily Bryant; Mental Health providers Deb Green and Daryl Bazydlo; Victim Advocate Jean Carroll; and Social Worker Barbara T. Slayton.

4.3(d)(1).

### Standard

In determining whether a pro se pleading states a claim, the court construes the pleading liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Disregarding any legal conclusions, the court considers whether the factual content in the pleading and inferences reasonably drawn therefrom, taken as true, state a facially plausible claim to relief.  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

### Discussion

I.  **Excessive Force**

Beaulieu has alleged a plausible claim that NHSP Cpl. Craig Orlando and C.O. Christopher Ziemba used excessive force against him on March 7, 2013, "maliciously and sadistically to cause harm," rather than "in a good-faith effort to maintain or restore discipline."  Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (internal quotation marks and citation omitted).  In an Order issued this date, the court therefore directs service of an Eighth Amendment excessive force claim against Orlando and Ziemba.

## II. **Endangerment Claims**

Beaulieu alleges that defendants placed him in danger, or failed to protect him from harm, on a number of occasions during his incarceration at the NHSP. To establish unconstitutional endangerment, an inmate must assert facts to demonstrate that, objectively, he was incarcerated "under conditions posing a substantial risk of serious harm," and that the involved prison officials knew of and disregarded the excessive risk to the inmate's safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). An official's knowledge of a substantial risk is a factual question that may be demonstrated "'in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Calderón-Ortiz v. LaBoy-Alvarado, 300 F.3d 60, 65 (1st Cir. 2002) (quoting Farmer, 511 U.S. at 842). On the other hand, officials will not be liable if they responded reasonably to a known substantial risk. See Giroux v. Somerset Cnty., 178 F.3d 28, 32 (1st Cir. 1999) (citing Farmer, 511 U.S. at 844).

Beaulieu claims that in January 2012, he reported to a nurse that he had been raped by another inmate, "A.D." When the nurse filed a report under the Prison Rape Elimination Act ("PREA"), and the report was investigated, A.D. discovered that

3

Beaulieu had made that report.  A.D communicated a threat to Beaulieu, that if he didn't recant his statement, A.D. would hurt both Beaulieu and Beaulieu's family.  In response, Beaulieu told prison officials that his rape report was false.  Beaulieu complains here, however, that A.D. was later allowed a prison job that allowed him access to Beaulieu while Beaulieu was housed in SHU.

In February 2014, while Beaulieu was house din the Special Housing Unit ("SHU") in a "supervised care" cell, Beaulieu states that he was again raped, by another inmate, "M.R." Beaulieu states that the rape occurred because the SHU officers don't pay adequate attention to what is happening in the cells on that unit.  Beaulieu fails to state what specific factors about his housing placement and what the SHU officers failed to do that would allow the court to find either that the officers were aware, or should have been aware, that Beaulieu was at risk of harm, or that any officer with knowledge of such a risk failed to reasonably respond thereto.  When Beaulieu did reveal the rape by M.R., in a group therapy session, his social worker and other officers, including the NHSP Investigations Unit, took actions in response to his report.

On July 16, 2014, Beaulieu states that he was placed in the Residential Treatment Unit ("RTU") at the prison, after a long

4

wait.  On the day of Beaulieu's arrival at RTU, he states that an inmate there, "J.B.," asked to speak with Beaulieu, and that when Beaulieu entered J.B.'s cell, J.B. pressured Beaulieu to engage in sexual acts with him.  When Beaulieu refused, J.B. forcibly raped Beaulieu.  Although an officer allegedly saw something occur between Beaulieu and J.B., Beaulieu told the officer that nothing had happened, because he didn't trust NHSP officers to respond appropriately to protect his safety.

Beaulieu spent most of 2013 and part of 2014 in SHU. Beaulieu complains that several SHU officers "let it be known" that Beaulieu had been "ratting" or "snitching," and that as a result, Beaulieu received threats from other inmates, some of Beaulieu's property was missing, and someone "mess[ed] with" Beaulieu's food.  Beaulieu states that the officers didn't help him with these issues or take other steps to protect him from harm.

Beaulieu further alleges that the DOC has failed to protect him from harm since his initial PREA report was filed, evidenced by the fact that, since then, he has been subject to seven assaults, five sexual assaults, and two incidents of sexual harassment.  Beaulieu does not indicate that any particular officer was actually aware, either of these events or that Beaulieu was at risk of any other serious harm, and still failed

to take steps to respond appropriately that risk.

While Beaulieu has asserted that he suffered serious harm from other inmates, he also states that on the occasion he reported being raped, he then told prison staff that the report was false.  On another occasion, Beaulieu was raped, but denied it to staff, and, on a third occasion, staff was unaware that Beaulieu had been raped.  Beaulieu has failed to state facts to show that any defendant was actually aware that Beaulieu had been harmed, or was aware if sufficient facts that they should have been aware of a significant risk of serious harm to Beaulieu, and failed to reasonably respond to those risks.  Accordingly, Beaulieu has failed to state endangerment or failure to protect claims upon which relief might be granted.

### III. **False Disciplinary Reports and Denial of Due Process**

Beaulieu asserts that, on two occasions, he was falsely accused, and found guilty of disciplinary violations, and that an NHSP hearings officer failed to follow prison procedures in adjudicating those disciplinary matters, in violation of Beaulieu's Fourteenth Amendment due process rights.  In evaluating a due process challenge to a prison disciplinary proceeding, the court must determine if disciplinary penalties "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v.

Conner, 515 U.S. 472, 484 (1995).  Beaulieu does not state what sanctions he received, or provide any basis for this court to find that he received sanctions that exposed him to any atypical or substantial hardship in relation to the ordinary incidents of prison life, or otherwise exceeded the scope of his sentence.  Beaulieu has thus failed to state a claim that he suffered any deprivation of a protected liberty interest as a result of the challenged disciplinary proceedings, and has therefore failed to state a due process claim.  Accordingly, the district judge should dismiss Beaulieu's due process challenges to disciplinary proceedings against him.

**IV.  Medical Care**

    A.  Eighth Amendment Standard

To assert an Eighth Amendment claim based on inadequate medical care, plaintiff must establish that the deprivation was, objectively, "sufficiently serious," and must also show that, "[s]ubjectively, . . . prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmate's health or safety." Perry v. Roy, 782 F.3d 73, 78 (1st Cir. 2015) (internal quotation marks and citations omitted). "'To demonstrate deliberate indifference a plaintiff must show (1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to

7

take easily available measures to address the risk.'" Penn v. Escorsio, 764 F.3d 102, 110 (1st Cir. 2014) (citation omitted), cert. denied, No. 14-709, 2015 U.S. LEXIS 2493, *1 (Apr. 3, 2015). Deliberate indifference is not demonstrated "where the dispute concerns not the absence of help, but the choice of a certain course of treatment." Kosilek v. Spencer, 774 F.3d 63, 92 (1st Cir. 2014) (internal quotation marks and citation omitted), pet. for cert. filed, No. 14-1120 (U.S. Mar. 16, 2015).

    B.    Ice

Beaulieu complains that NHSP Sgt. Michael Shaw failed to give him ice for a lump on his head, as directed by a nurse, for an injury. The allegation fails to demonstrate that Bealieu had a "serious medical need" or that any individual was aware of the severity of that need, and failed to provide him with treatment, with deliberate indifference to his health and safety. Accordingly, the district judge should dismiss this claim.

    C.    Gender Dysphoria

Beaulieu states that he has been "trying and trying to get diagnosed with [gender dysphoria] and start [his] treatment to be a female." Beaulieu states that he has talked to numerous mental health and medical care providers at the prison, and none has diagnosed him with gender dysphoria or authorized treatment

or other accommodations for that condition. Beaulieu has failed to state any facts to show that any person at the NHSP is aware of any facts that demonstrate that the failure to provide gender transition treatment for Beaulieu will cause a serious risk of harm to Beaulieu's health and safety. The only fact asserted, that Beaulieu disagrees with the defendants' failure to diagnose him with and treat him for gender dysphoria, is insufficient to show that any defendant acted with deliberate indifference. Accordingly, the district judge should dismiss this claim.

## Conclusion

For the foregoing reasons, the district judge should dismiss all of the claims asserted, except a claim alleging that Beaulieu was subjected to excessive force on March 7, 2012, from the complaint. Further, the district judge should drop all of the defendants, except Cpl. Craig Orlando and C.O. Christopher Ziemba, from this action. In an Order issued this date, the court has directed service of the complaint, with regard to the excessive force claim, upon Orlando and Ziemba.

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's

order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010).

_____
Andrea K. Johnstone
United States Magistrate Judge

May 4, 2015

cc: Christopher Beaulieu, pro se