UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Christopher Beaulieu[1]

   v.                                         Civil No. 15-cv-12-JD
                                              Opinion No. 2018 DNH 051
Craig Orlando, et al.

O R D E R

Crystal Beaulieu, who is proceeding pro se, brings claims against employees of the New Hampshire Department of Corrections ("DOC") and another inmate, Matthew Rodier, arising out of incidents that occurred at the New Hampshire State Prison for men in March of 2012 and April of 2014. The state defendants move for summary judgment on the claims against them. Despite receiving extensions of time over the past ten months, Beaulieu failed to respond to the motion.

Standard of Review

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute is one that a reasonable fact-finder could resolve in favor of either party

---

[1] The complaint was filed by Christopher Robert Beaulieu. Since filing, Beaulieu has decided to identify as female, using the name "Crystal," and prefers to be referred to with female pronouns.

and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015). The facts and reasonable inferences are taken in the light most favorable to the nonmoving party. McGunigle v. City of Quincy, 835 F.3d 192, 202 (1st Cir. 2016). "On issues where the movant does not have the burden of proof at trial, the movant can succeed on summary judgment by showing 'that there is an absence of evidence to support the nonmoving party's case.'" OneBeacon Am. Ins. Co. v. Commercial Union Assurance Co. of Canada, 684 F.3d 237, 241 (1st Cir. 2012) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

Under the local rules in this district, a party moving for summary judgment must include "a short and concise statement of material facts, supported by appropriate record citations, as to which the moving party contends there is no genuine issue to be tried." LR 56.1(a). A party opposing the motion must also include a statement of material facts with appropriate record citations to show that a genuine factual dispute exists. LR 56.1(b). "All properly supported material facts set forth in the moving party's factual statement may be deemed admitted unless properly opposed by the adverse party." Id.

In this case, the defendants filed their motion for summary judgment on April 6, 2017. Beaulieu was granted six extensions

2

of time to file a response to the motion.  The last deadline was February 16, 2018, when Beaulieu was notified that no further extensions would be granted.  After the deadline had passed, Beaulieu again asked for an extension for an unspecified amount of time.  That request was denied.  Therefore, the properly supported factual statement in the defendants' memorandum in support of summary judgment is deemed admitted.

Background

Beaulieu was an inmate at the New Hampshire State Prison in March of 2012 and April of 2014, when the incidents at issue in this case occurred.  The state defendants, who are Craig Orlando, Christopher Ziemba, Ernest Orlando, Michael Shaw, Barbara Slayton, Paul Casco, Kevin Stevenson, Page Kimball, and Douglas Bishop, were prison officers and officials during the time of those incidents.  Beaulieu also brings claims against Matthew C. Rodier, another inmate.

In March of 2012, Beaulieu was housed in the maximum security Special Housing Unit ("SHU") at the prison.  Because Beaulieu had threatened to spit on prison staff, Lieutenant Michaud had ordered staff to put a "spit hood" on Beaulieu whenever she was moved from her cell.  In April of 2014, Beaulieu was housed in the Secure Psychiatric Unit ("SPU").

A.  March 7, 2012, Incident

On March 7, 2012, Shaw asked Ziemba and Orlando to move Beaulieu from her cell on J tier in SHU to the Officer in Charge in SHU for a disciplinary report hearing.[2] Once Beaulieu was handcuffed, Orlando put the spit hood over her head. While Ziemba and Orlando were escorting Beaulieu down the tier corridor, Beaulieu kicked a deodorant stick that was on the floor and then turned her head toward Orlando and spat at him.

Despite the spit hood, particles of spit covered the right side of Orlando's face. Orlando took Beaulieu to the floor, and Ziemba helped to restrain her. During their efforts to restrain Beaulieu, she was injured, which caused bleeding over her eye.[3] When the officers had control of Beaulieu, they brought her to her feet and took her to the SHU Officer in Charge, as planned. Both Orlando and Ziemba state that they used only the amount of

---

[2] The disciplinary report for the incident states that Corrections Officer Thimba also participated in escorting Beaulieu, but the defendants do not mention Thimba in their statement of facts, and Thimba is not a defendant in this case. In his own report of the incident, Thimba states that he had been passing out toilet paper from a cart on J tier and was just about to leave when the spitting incident occurred. Thimba confirmed that Beaulieu spat at Orlando. The video of the incident, which was recorded by a security camera, confirms that Thimba was present but did not participate in the incident.

[3] As mentioned above, the incident was recorded by a security camera, and the court has reviewed the video.

4

force necessary to control Beaulieu and that they had no malicious or sadistic intent.

Because of the injury, Beaulieu was taken to a dayroom for medical treatment. Nurse Pat Keon examined and treated Beaulieu. Beaulieu had a scrape with some swelling on her head. Although Beaulieu also complained of right arm pain, she was found to have a good range of motion. Keon gave Beaulieu Ibuprofen for the scrape and cleared her to return to her cell.

Orlando went to a bathroom to wash the spit off of his face. Other officers took Beaulieu back to her cell where she was agitated and demanded that pictures be taken of her injury. Shaw notified the shift commanders that the incident had occurred. Later, when Orlando was doing rounds, Beaulieu apologized for spitting on him.

Beaulieu was charged with a major disciplinary infraction for striking an officer. During the disciplinary proceeding, Beaulieu did not deny spitting on Orlando. Following a hearing, Beaulieu was given fifteen days of punitive segregation and lost privileges for one hundred days.

Orlando did not bring assault charges against Beaulieu. A "Use of Force Review" was done for the incident by the prison, which determined that Beaulieu must wear a spit hood whenever she was out of her cell and that all of her movements would be

videotaped to document her behavior. In order to provide video surveillance, Beaulieu was moved to a different cell.

B. <u>Incidents in April of 2014</u>

On the morning of April 18, 2014, Beaulieu was in a therapeutic group in the Secure Psychiatric Unit ("SPU") when she asked to be excused. Out in the hallway, Beaulieu told her social worker, Barbara Slayton, that she could not focus and that if things did not change she might have to go to the "suicide tank." When they moved to another room, Beaulieu wrote on a piece of paper that she gave to Slayton: "I can't say no A was pressured into sexually acts he has Hep C and it is attempted murder."

Beaulieu identified Matthew Rodier as the inmate who was pressuring her for sex. She also said that Rodier threatened her so that she was afraid to report the behavior. She had concerns for her health related to sexual activity with Rodier. Slayton called SPU Captain, Paul Cascio, who joined her meeting with Beaulieu. Cascio told Beaulieu that she would be locked in her cell on Acute Care Status ("ATC"), pending an investigation of her charges.[4]

---

[4] The defendants abbreviate "Acute Care Status" as "ATC".

Cascio put Beaulieu on ATC for her safety and notified the Prison Rape Elimination Act ("PREA") investigator of Beaulieu's charges. Cascio also called the investigation unit and was told an investigation would be done. Beaulieu underwent a mental health assessment and was determined not to be a suicide risk.

At 2:00 in the afternoon the same day, SPU staff notified Cascio that Beaulieu did not want to continue on ATC. Beaulieu sent an inmate request slip in which she said that she did not want to be on ATC and that "if your staff don't talk about it then my safety will not be at risk." She further asked that they not put her on ATC for the weekend.

Cascio met with Beaulieu at 4:00 p.m., and Beaulieu recanted her accusations against Rodier. Cascio called the investigations unit and was told to get a statement in writing from Beaulieu. The investigator said that he would not conduct an investigation if the allegations of sexual contact by Rodier were recanted.

Cascio got a written statement from Beaulieu in which she stated the following:

> I am hereby writing this to inform the DOC that I have no concern for my safety or worries that Inmate Matthew Clayton Rodier nor any one for that fact will sexually assault me in anyway. I have made Allegations against Mr. Rodier but there is no concerns there and I feel safe being SC on F-ward-SPU and be allowed the same as them do to the fact that I

> have no concerns for my safety. Nor Feel Concerned
> that I will be pressured in any way to do any sexual
> Act.
> Therefore wish that this be disregarded
> Allegations of Sexual Contact against I/M Matthew
> Clayton Rodier.

Doc. no. 127-11. The statement is dated April 18, 2014, at "16" and states that the statement was given by Christopher Beaulieu to "Captin" Paul S. Cascio. Cascio then removed Beaulieu from ATC.

Slayton met with Beaulieu on April 21, 2014, with security present, to address reports that Beaulieu had been making sexual remarks and touching other inmates. Beaulieu admitted sexual relations with Rodier and denied any coercion to engage in that conduct. Beaulieu also said that a statement she made in a previous inmate request slip, accusing Slayton of pressuring her to make allegations against Rodier, was not true and explained that she made the statement against Slayton because she felt like blaming someone.

On May 4, 2014, Beaulieu wrote an inmate request slip in which she alleged that Rodier had sexually assaulted her on April 30, 2014. Beaulieu's treatment team received the slip the next day. Kevin Stevenson, SPU Administrator, sent the slip to the PREA investigator and the victim advocate. By that time, Rodier had been released from the prison on parole.

Beaulieu wrote two inmate request slips on June 22, 2014, one to Cascio and one to Stevenson, stating that a medical assessment was not done on April 18 when she alleged sexual contact from Rodier and that while she was placed on ATC, Rodier was not restricted. Beaulieu believed that the staff had not followed Policy and Procedure Directive ("PPD") 5.19, which addresses PREA procedures, on April 18. In August, Beaulieu sent an inmate request slip to the investigations unit, again stating that the policy was not followed. The defendants do not provide any information about the outcome of Beaulieu's request slips.

In December of 2014, Beaulieu appealed the prison's response to the April 18 events to the Director of Medical and Forensic Services. Beaulieu stated that PPD 5.19 required separation of inmates who were subject to sexual assault allegations and that she and Rodier were both housed in F ward. In addition, Beaulieu argued that Rodier should have been put on ATC, and instead Rodier was allowed out of his cell, while Beaulieu remained on lock down until she wrote the statement recanting her accusations about sexual contact with Rodier.

C. Claims

In this case, Beaulieu brings the following claims, as have been allowed on preliminary review and by amendment:

1. NHSP officers Craig Orlando and Christopher Ziemba used excessive force against Beaulieu on March 7, 2012, in violation of Beaulieu's Eighth Amendment right not to be subject to cruel and unusual punishment.

2. NHSP officers Craig Orlando and Christopher Ziemba are liable to Beaulieu for the state law tort of assault and battery for the use of force they exerted against Beaulieu on March 7, 2012.

3. NHSP officers Ernest Orlando and Michael Shaw are liable to Beaulieu for the state law tort of negligent supervision, for their failure to adequately supervise defendants Craig Orlando and Christopher Ziemba on March 7, 2012, resulting in those defendants' commission of the tort of assault and battery on Beaulieu.

4. NHSP officials Barbara Slayton, Paul Casco,[5] and Kevin Stevenson, were deliberately indifferent to a significant risk of serious harm to Beaulieu on April 18 and 30, 2014, when, knowing that Beaulieu had been sexually assaulted by another inmate, Matthew Rodier, those individuals failed to separate Beaulieu from Rodier, resulting in Rodier threatening Beaulieu, forcing Beaulieu to recant her allegation of sexual assault, and further resulting in Rodier sexually assaulting Beaulieu again.

5. NHSP Cpl. Paige Kimball acted with deliberate indifference to a significant risk of serious harm to Beaulieu, in violation of Beaulieu's Eighth Amendment rights, on April 18, 2014, when Kimball, who was the individual responsible for the direct supervision of the inmates/patients on F-Ward in SPU, failed to separate Beaulieu and Rodier, allowing Rodier sufficient access to Beaulieu to enable Rodier to threaten Beaulieu and coerce Beaulieu to recant her allegation that Rodier had sexually assaulted her.

6. Former NHSP Corrections Officer ("C.O.") Douglas Bishop acted with deliberate indifference to a significant risk of serious harm to Beaulieu, in violation of Beaulieu's Eighth Amendment rights, on April 30, 2014, when Bishop, who was

---

[5] In their motion for summary judgment, the defendants spell the name Cascio.

the individual responsible for the direct supervision of the inmates/patients on F-Ward in SPU, failed to separate Beaulieu and Rodier, allowing Rodier sufficient access to Beaulieu to enable Rodier to sexually assault Beaulieu.

7. NHSP inmate Matthew Rodier committed the intentional torts of assault and battery under New Hampshire law when he sexually assaulted Beaulieu on one occasion prior to April 18, 2014, and again on April 30, 2014.

## Discussion

The state defendants move for summary judgment on the ground that Beaulieu cannot prove her claims.[6] Alternatively, the state defendants contend that they are not liable based on qualified immunity for the claims based on Beaulieu's allegations arising from incidents in April of 2014. The state defendants also ask the court to decline to exercise supplemental jurisdiction over the state law claims if the federal claims are dismissed.

A. March 7 Incident

Beaulieu alleges that Orlando and Ziemba used excessive force when they subdued her after she spat on Orlando. Beaulieu contends that the force used violated her Eighth Amendment right to be free of cruel and unusual punishment and also constitutes assault and battery under state law. In addition, Beaulieu

---

[6] Rodier, who is proceeding pro se, did not move for summary judgment.

alleges that Ernest Orlando and Michael Shaw are liable under state law for negligent supervision, because they failed to adequately supervise Orlando and Ziemba.

   1.   Eighth Amendment Claim

Prison officers violate the Eighth Amendment if the physical force used was excessive in light of the need to maintain or restore discipline and order. Hudson v. McMillian, 503 U.S. 1, 6 (1992). Force is excessive if applied "maliciously and sadistically to cause harm" rather than "in a good faith effort to maintain or restore discipline." Id. at 7. Factors that are relevant to whether the use of force was excessive include: (1) "the extent of injury suffered by [the] inmate"; (2) "the need for application of force"; (3) "the relationship between that need and the amount of force used"; (4) "the threat reasonably perceived" by the officer; and (5) "any efforts made to temper the severity of a forceful response." Id.

At the time of the incident on March 7, 2012, Beaulieu was being escorted from her cell to a disciplinary report hearing. She was wearing a spit hood over her head because of her prior threats to spit on staff. During the escort, Beaulieu kicked a deodorant stick and then spit at Orlando with such force that particles of spit covered the right side of Orlando's face

12

despite the spit hood.  Orlando took Beaulieu to the floor, and Ziemba helped to restrain her.  Beaulieu sustained an injury over her eye.  She was treated by a nurse at the prison for a scrape and some swelling.

The officers reasonably attempted to avoid being spat upon by using the spit hood on Beaulieu.  When Beaulieu was able to spit through the hood, the officers needed to restore order by restraining Beaulieu to stop her from spitting.  The amount of force necessary to take Beaulieu to the floor where she could be restrained was proportional to the threat of continued spitting.  The injury she sustained was relatively minor.

The circumstances that resulted in Beaulieu's injury support a conclusion that Orlando and Ziemba used reasonable force in response to Beaulieu's actions rather than reacting maliciously or sadistically.  See, e.g., Hardwick v. Packer, 546 F. App'x 73, 76 (3d Cir. 2013) Reyes v. Chinnici, 54 F. App'x 44, 47-48 (3d Cir. 2002); Wheeler v. Fritz, 2015 WL 4485436, at *12 (D. Md. July 20, 2015); Chestnut v. Singleton, 2015 WL 2345266, at *3 (D.S.C. May 14, 2015); Jordan v. Sheehy, 2013 WL 943764, at *3 (D. Conn. Mar. 11, 2013).  Therefore, no Eighth Amendment violation occurred.

13

2. <u>Assault and Battery Claim</u>

A successful assault claim requires evidence that the defendant "intended to cause harmful or offensive contact" with the plaintiff and that the plaintiff was "put in imminent apprehension of such contact."  King v. Friends of Kelly Ayotte, 860 F. Supp.2d 118, 129-30 (D.N.H. 2012) (quoting Yale v. Town of Allenstown, 969 F. Supp. 798, 801 (D.N.H. 1997) (citing Restatement (Second) of Torts § 21(1) (1965))).  A defendant may be held liable for battery if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results."  Hudson v. Dr. Michael J. O'Connell's Pain Care Ctr., Inc., 822 F.Supp.2d 84, 94 (D.N.H.2011) (quoting United Nat'l Ins. Co. v. Penuche's, Inc., 128 F.3d 28, 32 (1st Cir. 1997) (citing Restatement (Second) of Torts § 13 (1977))); Rand v. Town of Exeter, 976 F. Supp. 2d 65, 75-76 (D.N.H. 2013).

As is discussed in the context of the Eighth Amendment claims, the officers acted reasonably to control Beaulieu.  For that reason, the record does not support Beaulieu's assault or battery claims.

### 3. Negligent Supervision Claim

Beaulieu contends that Michael Shaw and Ernest Orlando were negligent in supervising Craig Orlando and Christopher Ziemba which resulted in Beaulieu being the victim of assault and battery. Because Beaulieu has not shown a triable issue in support of her assault and battery claim, the negligent supervision claim also fails.

## B. April of 2014 Incidents

As construed on preliminary review, Beaulieu claims that prison officers Paige Kimball, Douglas Bishop, Barbara Slayton, Paul Cascio, and Kevin Stevenson were deliberately indifferent to a significant risk of serious harm to Beaulieu on April 18 and 30, 2014, in violation of the Eighth Amendment when they allowed Rodier access to Beaulieu. As a result, she alleges, Rodier threatened Beaulieu on April 18, forcing Beaulieu to recant her allegation of sexual assault. Then, with continued access, Rodier sexually assaulted Beaulieu again on April 30.

The defendants contend that Beaulieu cannot prove that there was a substantial risk of harm before Rodier was allowed access to her because Beaulieu had recanted her allegations of being assaulted by Rodier and asked to be taken off ATC protection. They also contend that they are entitled to qualified immunity.

1. Standard

The Eighth Amendment imposes a duty on prison officials and officers "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (internal quotation marks omitted). A violation of Eighth Amendment rights occurs when the conditions of incarceration present "a substantial risk of serious harm" and the official or officer was deliberately indifferent to the inmate's health or safety. Id. at 834. Therefore, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 839.

2. Circumstances in this Case

On April 18, 2014, it is undisputed that the defendants knew that Beaulieu was a transgender person housed in the SPU in a prison for men. They also knew that Beaulieu had accused Rodier of rape. In response, they put Beaulieu on ATC, which meant that she was locked in her cell in SPU for her safety, and notified the PREA investigator about Beaulieu's accusations.

16

Despite those precautions, Beaulieu contends that Rodier was allowed sufficient access to her to force her to recant her accusations of rape against Rodier, which resulted in terminating her ATC protection and a subsequent rape by Rodier.

The record, however, shows different events, which Beaulieu is deemed to have admitted. As soon as Beaulieu accused Rodier of rape, she was put in ATC protection. There is no evidence that Rodier had access to Beaulieu while she was on ATC protection or that SPU staff knew of any contact between Rodier and Beaulieu. Instead, Beaulieu complained to SPU staff about being locked in her cell.

When her complaints did not result in releasing ATC protection, Beaulieu submitted an inmate request slip in which she stated that she had no concern about sexual assault by Rodier or anyone else and that she would be safe if released from ATC protection as long as the staff did not talk about her accusations against Rodier. Based on her request and her representations, Beaulieu was released from ATC protection.

Under those circumstances, the record does not show a material factual dispute as to whether the defendants were deliberately indifferent to a substantial risk of harm to Beaulieu. Rather than being indifferent, the defendants immediately reacted and protected Beaulieu when she accused

17

Rodier of rape.  They had no information that the ATC protection they provided was insufficient.  Beaulieu was released from ATC protection only because she asked to be and because she represented that her safety was not an issue.

In addition, a few days later, Officer Slayton met with Beaulieu to address reports from other inmates that Beaulieu had been making sexual remarks and touching other inmates.  During the meeting, Beaulieu admitted sexual relations with Rodier and denied any coercion to engage in that conduct.  Beaulieu also told Slayton that she had falsely accused Slayton of pressuring her to make allegations against Rodier.

Beaulieu did not make her next allegations against Rodier until May 4, when she accused Rodier of raping her on April 30.  Beaulieu points to no evidence to show that the defendants were put on notice, after she recanted her accusations against Rodier on April 18 and met with Slayton on April 21, that Rodier presented a substantial risk of serious harm to Beaulieu.  As a result, the record does not show that the defendants were deliberately indifferent to a substantial risk of harm to Beaulieu.  Because Beaulieu's claim fails on the merits, it is not necessary to consider qualified immunity.

C.  Supplemental Jurisdiction

All of the constitutional claims, which are brought against the state defendants, are resolved on summary judgment against Beaulieu.  As a result, the claims that were the basis for subject matter jurisdiction in this case, along with related state law claims against the state defendants, have been dismissed.  The only remaining claim is a separate state law claim against a separate defendant, Matthew C. Rodier.

The state law claim against Rodier involve different issues and evidence than have been considered for purposes of the state defendants' motion for summary judgment.  The court declines to exercise supplemental jurisdiction over the state law claims against Rodier (Claim 7).  28 U.S.C. §§ 1367(a) & (c)(3).

## Conclusion

For the foregoing reasons, the state defendants' motion for summary judgment (document no. 127) is granted.

Claims 1 through 6 are dismissed with prejudice.

The court declines to exercise supplemental jurisdiction over the remaining state law claims brought against Matthew Rodier in Claim 7, which is dismissed without prejudice.

Document no. 164 is terminated as moot.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph DiClerico, Jr.
United States District Judge

March 12, 2018

cc: Christopher R. Beaulieu, pro se
    Laura E.B. Lombardi, Esq.
    Matthew Rodier, pro se